Christopher R. Pitoun (SBN 290235)
HAGENS BERMAN SOBOL SHAPIRO LLP
301 North Lake Avenue, Suite 920
Pasadena, California 91101
Telephone: (213) 330-7150
Facsimile: (213) 330-7152
Email: christopherp@hbsslaw.com

Robert B. Carey (*pro hac vice forthcoming*)
Rachel E. Fitzpatrick (*pro hac vice forthcoming*)
HAGENS BERMAN SOBOL SHAPIRO LLP
11 West Jefferson, Suite 1000
Phoenix, Arizona 85003
Telephone: (602) 840-5900
Facsimile: (602) 840-3012
Email:  rob@hbsslaw.com
        rachelf@hbsslaw.com

*Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

| | |
|---|---|
| ALISON HARDESTY and ERIKA HEIDEWALD, individually and on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> FENIX INTERNATIONAL LIMITED and FENIX INTERNET LLC, <br><br> Defendants. | Case No. _____ <br><br> **CLASS ACTION COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** |

CLASS ACTION COMPLAINT

Case No. _____

011337-11/3505440 V1

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................ 1

II.   JURISDICTION & VENUE ............................................................... 4

III.  PARTIES .......................................................................................... 6

    A.    Plaintiffs ................................................................................ 6

    B.    Defendants ............................................................................. 6

IV.  FACTUAL BACKGROUND ............................................................ 8

    A.    From Inception, Defendants Directed, and Continue to Direct, Their OnlyFans Business Activities in California and the United States ........................................................ 8

        1.    Fenix specifically targeted California to develop and grow OnlyFans via the Referral Program. ........................... 8

        2.    A significant portion of OnlyFans's business is run from California and the United States. ................................... 13

        3.    OnlyFans's banking, payment, and other operations are based in California and the United States. ......................... 16

    B.    Defendant Fenix's OnlyFans Referral Program ............................... 18

        1.    Fenix promised Plaintiffs and Class members lifetime commissions on Referred Creators' gross revenues through its Referral Program. ................................... 18

        2.    Fenix reneges on its lifetime referral commissions promise ................................................................. 27

    C.    Plaintiffs' Stories .................................................................. 29

V.   CLASS ACTION ALLEGATIONS ........................................................ 32

    A.    The Requirements of Rule 23(a)(1)-(4) are Satisfied. ....................... 32

-i-

CLASS ACTION COMPLAINT

Case No. _____

011337-11/3505440 V1

B.   The Requirements of Rule 23(b)(2) are Satisfied: Defendants' Conduct Generally Applies to the Class, Making Classwide Declaratory Relief Appropriate. ...........................35

C.   The Requirements of Rule 23(b)(3) are Satisfied. ..............................36

VI.   CONTINUOUS ACCRUAL OF PAYMENT OBLIGATIONS ..................38

VII.   CAUSES OF ACTION ........................................................................39

COUNT I: BREACH OF CONTRACT ................................................................39

COUNT II: PROMISSORY ESTOPPEL..............................................................41

COUNT III: CONVERSION...............................................................................42

VIII.   PRAYER FOR RELIEF ......................................................................43

IX.   DEMAND FOR JURY TRIAL...............................................................44

-ii-

CLASS ACTION COMPLAINT

Case No. _____

011337-11/3505440 V1

## I.   INTRODUCTION

1.   This is a proposed class action arising from Defendants Fenix International Limited's ("Fenix") and Fenix Internet LLC's ("Fenix Internet") (collectively, "Defendants") repeated failure to pay due, owing, and accrued commissions to Plaintiffs and putative class members for their work promoting and growing Fenix's business—the website and social media platform OnlyFans.com ("OnlyFans")—into the multibillion-dollar company it is today.

2.   Fenix owns and operates OnlyFans, where individuals ("Creators") can post exclusive online content, largely adult entertainment content and the like, for paying subscribers ("Fans").

3.   When it started up in 2016, Fenix adopted a referral commission system that, through Fenix's advertising and terms of service, promised to pay those who referred Creators to the OnlyFans platform ("Referring Users") 5% of the income (aka gross revenues) of any new Creators ("Referred Creators") that joined OnlyFans and generated revenue. This program tracked referrals through a unique referral link provided to each Referring User, and Fenix paid 5% of any revenue any Referred Creator produced to the Referring User (the "Referral Program"). What made this commission even more enticing was that Fenix promised to pay these commissions *for life*. This meant that, if a Referred Creator continued to generate income on OnlyFans, the Referring User would continue to receive a 5% cut of those gross revenues, no matter how long this went on. Importantly, this 5% commission came entirely out of the 20% fee that Fenix was entitled to take from the Referred Creators' gross revenues. In other words, the Referred Creators did not contribute to the commissions paid to Referring Users and their net pay was not reduced by the Referral Program commissions. Fenix bore the entire cost of the commissions paid.

4.   From inception, Fenix and its affiliates prominently advertised the Referral Program on the OnlyFans website and social media accounts. The promise

-1-
CLASS ACTION COMPLAINT

Case No. _____

011337-11/3505440 V1

was crystal clear: Referring Users would "earn 5% on all income, from any user who joins via [their] link" for "LIFETIME." This was not a "one off [sic] payment," but rather a commission on "every user … every payment [received by a Referred Creator] … [paid] every month … [for] LIFETIME."





5. Fenix promised to pay Referring Users this referral commission monthly, so long as it exceeded a nominal threshold amount, directly into their linked bank accounts.

6. The Referral Program's 5% lifetime referral commission was still promised—and reiterated in Fenix's Terms of Service ("TOS") (agreed to by each user when creating an OnlyFans account)—when Plaintiffs Erika Heidewald and

-2-

CLASS ACTION COMPLAINT

Case No. _____

011337-11/3505440 V1

Alison Hardesty joined the OnlyFans platform in October and November 2019, respectively.

7. Plaintiffs quickly began referring new Creators via their unique links. Over the next six months, Plaintiff Heidewald referred more than 2,200 new Creators and Plaintiff Hardesty referred more than 4,500 new Creators, steadily growing their referral income into thousands of dollars per month.

8. But as OnlyFans grew—in large part due to the efforts of its Referring Users like Plaintiffs—Fenix got greedy. On May 1, 2020, Fenix abruptly announced that it would no longer pay lifetime commissions on Referred Creators' gross revenues. Instead, Referring Users would only be paid referral commissions for the first 12 months of each new Referred Creator's earnings. It also changed the terms to cap referral payments at $50,000 per Referred Creator, meaning it would no longer be 5% of "all income," as promised, harming not just those who refer popular Creators but those who refer long-term Creators as well.

9. Additionally, Fenix's terms applied the change to Creators already referred to OnlyFans and active on the platform before the May 1, 2020 announcement. Fenix would only pay referral commissions to Plaintiffs and putative class members for previously Referred Creators until May 1, 2021.

10. These changes violated Fenix's earlier promise of lifetime referral commissions and deprived Referring Users, including Plaintiffs, who had spent considerable time and resources promoting OnlyFans in exchange for these commissions, of their proper compensation.

11. Plaintiffs continued to receive increasing monthly commissions for their pre-May 2020 referrals, but that income dropped off nearly completely after Fenix's newly imposed 12-month period expired on May 1, 2021.

12. Defendant Fenix Internet—Fenix's wholly owned subsidiary that handled the payments side of OnlyFans, including the referral commissions owed to

-3-

CLASS ACTION COMPLAINT

Case No. _____

Referring Users located in the United States—substantially interfered with Plaintiffs' and class members' property rights by exercising dominion over, taking possession of, or improperly transferring the continuously accruing commissions owed to Plaintiffs and class members under the contract between them and Fenix for Creators they referred before May 1, 2020.

13. The putative class consists generally of OnlyFans Referral Program participants in the United States that referred at least one Creator before May 1, 2020, where that Referred Creator also earned income on OnlyFans at any time after May 1, 2021, together with a subclass of such participants who resided in California.

14. Because of Fenix's ongoing breaches of its promise to pay continuously accruing referral commissions, and Defendants' conversion of commission monies owed by Fenix to Plaintiffs and the putative class, Plaintiffs and the putative class were and are financially harmed. They seek declaratory relief and damages under Federal Rule of Civil Procedure 23(b)(2) and (b)(3) and allege breach of contract (and in the alternative, promissory estoppel) and conversion claims.

## II.   JURISDICTION & VENUE

15. This Court has jurisdiction over this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because at least one class member is of diverse citizenship from Defendants, there are more than 100 class members, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

16. This Court has personal jurisdiction over Plaintiffs because they are either residents of California or they consent to the Court's jurisdiction.

17. This Court has personal jurisdiction over Defendants because they transact and conduct business and are alleged to have violated common law in the State of California and this District, as alleged herein.

-4-

CLASS ACTION COMPLAINT

Case No. _____

011337-11/3505440 V1

18.     This Court has specific jurisdiction over Defendant Fenix because, as alleged herein, Fenix purposefully directed its Referral Program to and consummated the Referral Program agreement with Plaintiffs and Class members in the State of California and purposefully availed itself of the privilege of conducting activities in the State of California by conducting business to run, expand, and market its OnlyFans platform and Referral Program from and in California and by entering into numerous contractual relationships in California (including with California Creators, Fans, and other Referring Users), thereby invoking the benefits and protections of California's laws.[1]

19.     Likewise, this Court has specific jurisdiction over Defendant Fenix Internet because, as alleged herein, Fenix Internet purposefully directed its Referral Program payment-related activities to and paid referral commissions to Plaintiffs and Class members in the State of California and purposefully availed itself of the privilege of conducting activities in the State of California by collecting California Creators' revenues and paying Plaintiffs and other California-based class members their referral commissions in California, thereby invoking the benefits and protections of California's laws.[2]

20.     Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to Plaintiffs' claims—e.g., the formation of the Referral Program contract between Plaintiff Hardesty and Fenix and Hardesty's promotion and use of her unique referral link to refer Creators to OnlyFans, and Fenix's subsequent and ongoing breaches of that contract and

---

[1] *See John Doe 1 & John Doe 2 v. Fenix Int'l Ltd.*, 2026 WL 1965599, at *2 (9th Cir. July 2, 2026) (finding "complaint alleged sufficient facts to establish that Fenix expressly aimed its conduct at California"); *N.Z. v. Fenix Int'l Ltd.*, 2026 WL 1425183, at *8-10 (C.D. Cal. May 19, 2026) (finding exercise of personal jurisdiction over Fenix and Fenix Internet defendants reasonable).

[2] *Id.*

-5-
CLASS ACTION COMPLAINT
Case No. _____

011337-11/3505440 V1

Defendants' conversion of Hardesty's continuously accruing referral commissions—occurred in this Division of the Central District in the State of California, and the Court has personal jurisdiction over Defendants.

### III.   PARTIES

#### A.   Plaintiffs

21.   **Plaintiff Alison Hardesty** is a resident of Huntington Beach, California. Plaintiff Hardesty resided in Huntington Beach, California during all periods relevant to the events in this Complaint.

22.   Plaintiff Hardesty is a Creator and Referring User on OnlyFans, and she contracted to and participated in the OnlyFans Referral Program starting in November 2019.

23.   **Plaintiff Erika Heidewald** is a resident of Manor, Texas. Plaintiff Heidewald resided in Los Angeles, California during all periods relevant to the events in this Complaint.

24.   Plaintiff Heidewald is a Creator and Referring User on OnlyFans and she contracted to and participated in the OnlyFans Referral Program starting in October 2019.

#### B.   Defendants

25.   **Defendant Fenix International Limited** ("Fenix") is a private limited company registered in the United Kingdom and Hong Kong, with its principal place of business in London. Fenix owns and operates the website and social media platform OnlyFans, which it operates worldwide through various subsidiaries and affiliates, including in the United States, Manila, Singapore, Tokyo, New Delhi, and Bangkok.

26.   Fenix contracts and pays for the servers that host OnlyFans and owns all intellectual property and trademarks related to OnlyFans—including trademarks registered in the United States.

-6-
CLASS ACTION COMPLAINT

Case No. _____

011337-11/3505440 V1

27.　According to OnlyFans's LinkedIn profile, it currently has over 2,500 "associated members" located in the United States—including more than 250 in California. On information and belief, a substantial number of those individuals are employees or contractors involved in the daily operations of OnlyFans business and website. These include management- and executive-level employees.

28.　The OnlyFans platform permits individuals ("Creators"), including adult entertainers and celebrities (though you need not be famous to join and participate), to create content that only subscribers ("Fans") can access via the OnlyFans platform, oftentimes for a fee.

29.　**Defendant Fenix Internet LLC** ("Fenix Internet") is a Delaware limited-liability company headquartered in Florida. Fenix Internet is a wholly owned subsidiary of Fenix. On information and belief, Fenix Internet—at the direction of and under the control of Fenix—directly or indirectly collects and receives all OnlyFans-related payments from Fans located in the United States and then subtracts OnlyFans's 20% fee from those payments before remitting approximately the remainder of the Fan payments to the Creators. From OnlyFans's 20% fee, Fenix Internet pays Referring Users in the United States their 5% commissions on Referred Creators' gross revenues. These commission payments are reflected on Plaintiffs' and class members' bank statements as "Fenix Internet LLC."

30.　On information and belief, a substantial number of Creators and Referring Users reside in California.

31.　On information and belief, Fenix Internet has not obtained the necessary licenses to provide money transmitter services in any of the states in which it performs those services, including California.

-7-
CLASS ACTION COMPLAINT

Case No. _____

011337-11/3505440 V1

## IV.   FACTUAL BACKGROUND

**A.    From Inception, Defendants Directed, and Continue to Direct, Their OnlyFans Business Activities in California and the United States.**

**1.    Fenix specifically targeted California to develop and grow OnlyFans via the Referral Program.**

32.    California has been at the heart of the OnlyFans business model and explosive growth in the United States. From its earliest days, Fenix deliberately anchored its OnlyFans recruitment, executive leadership, and business operations in California, leveraging the state's known status as the adult entertainment capital of the world.

33.    The meteoric growth of OnlyFans in its first two years of operation was the result of a deliberate strategy by founder Tim Stokely to target adult entertainment performers in California, which had been "the adult entertainment capital of the world" since the 1970s.[3]

34.    Stokely enlisted California-based adult entertainment leader Bill Fox to spearhead the recruitment of adult entertainment performers. Fox, a webmaster and videographer from California, was instrumental in building OnlyFans's Creator base, particularly by targeting California's robust adult entertainment community.[4]

35.    According to Forbes, Fox was a "legendary adult-world webmaster and videographer" that Stokely used to "recruit adult performers to OnlyFans."[5]

---

[3] Melia Robinson, *How LA's 'Porn Valley' became the adult entertainment capital of the world*, BUSINESS INSIDER (Sep. 29, 2017, 10:46 AM MT), https://www.businessinsider.com/history-of-porn-valley-hugh-hefner-2017-9 (last visited Aug. 12, 2026).

[4] Andrew R.C. Marshall, Echo Wang, Rosa Furneaux, Jason Szep, Linda So, *OnlyFans Exposed | Part 7: How OnlyFans turned into a global empire bent on redefining porn*, REUTERS (Dec. 28, 2024, 1:00 PM GMT) https://www.reuters.com/investigates/special-report/onlyfans-sex-origins/ (last visited Aug. 12, 2026).

[5] Will Yakowicz, *Why OnlyFans Will Never Shed Its Reputation For Sexually Explicit Content*, FORBES (Aug. 20, 2021, 9:00 PM EDT),

-8-

CLASS ACTION COMPLAINT

Case No. _____

011337-11/3505440 V1

36.    The Forbes article further explains, quoting Brad Armstrong, an adult film veteran who directed 200 movies and who was once married to adult entertainer Jenna Jameson: "The English guys didn't know the adult industry; Bill [Fox] was the gate keeper and got their name out there and got people to sign up[.]"[6]

37.    Armstrong went on: "At the beginning, [Fox] was integral, he laid the foundational bricks to get it going."[7]

38.    Similarly, according to an April 2022 article regarding OnlyFans's "explosive growth": "Going from 0 to 1 is often a story of brute force. After the website launched, Stokely recruited someone who knew the inner workings of the adult industry to recruit adult performers and onboard them to the platform early on: Webmaster and videographer Bill Fox."[8]

39.    Fox was born in California in 1969 and lived there until his death in January 2019.

40.    Fox was also listed as a Manager of Rolling Fox Productions, LLC, a production company located in Chatsworth, California.

41.    Operating out of California, Fox recruited adult entertainment performers in California (such as Kianna Dior, Nikki Delano, and Tia Kai) and beyond to join OnlyFans as Creators via social media, including but not limited to his Twitter account.

---

https://www.forbes.com/sites/willyakowicz/2021/08/20/why-onlyfans-will-never-shed-its-reputation-for-sexually-explicit-content (last visited Aug. 12, 2026).

[6] *Id.*

[7] *Id.*

[8] Ruchin Kulkarni, *The explosive growth of OnlyFans*, PRODUCT HUNT (April 28, 2022), https://www.producthunt.com/stories/the-explosive-growth-of-onlyfans (last visited Aug. 12, 2026).

-9-
CLASS ACTION COMPLAINT

Case No. _____

42. For example, on or about October 27, 2017, Fox posted on Twitter (now X) that it was "[j]ust another day in the office onlyfansapp wears me out!! But life is GOOD[.]"[9]



Bill Fox
@MrBillFox

Just another day in the office onlyfansapp wears me out!! But life is
GOOD 👍 instagram.com/p/BaxrdsPj1IU/

9:15 PM · Oct 27, 2017

43. Fox's hard work to recruit Creators for OnlyFans prominently included promoting the Referral Program and its promise of lifetime commissions.

44. Beginning at least as early as March 16, 2017, Fox's Twitter account posted the same OnlyFans promotional graphic, stating "REASONS TO JOIN" OnlyFans that promised "Get paid 5% commission (lifetime) from referrals[.]"[10]



---

[9] @MrBillFox Post, X (Oct. 27, 2017, 8:15 PM), https://x.com/MrBillFox/status/924112269105037312 (last visited Aug. 12, 2026).

[10] @MrBillFox Media, X, https://x.com/MrBillFox/media (last visited Aug. 12, 2026).

CLASS ACTION COMPLAINT

Case No. _____

011337-11/3505440 V1

45.     Fox posted that same graphic repeatedly, often touting the Creators he was referring to OnlyFans and sharing his own referral link, including in one tweet on April 5, 2017, stating: "Another one of my followers just signed up at [http://onlyfans.com]! Join today at https://onlyfans.com/mrbillfox?ref=240110."[11]



46.     Fox also frequently retweeted OnlyFans Creators on his Twitter account.[12]

47.     Adult entertainment Creator CJ Miles stated that Fox recruited her to OnlyFans (at the time she had over 2.2 million followers on Instagram), saying that she "met [Fox] at his house [in Los Angeles] and he showed me all the girls and guys on OnlyFans that make money, and was like, 'you have to start your own[.]'"[13]

---

[11]     @MrBillFox   Post,   X   (Apr.   5,   2017,   11:12   AM), https://x.com/MrBillFox/status/849686085462622210 (last visited Aug. 12, 2026).

[12] @MrBillFox Account, X, https://x.com/MrBillFox (last visited Aug. 12, 2026).

[13] Adam Goldsmith, *Call centre worker who made £76 a month quits for OnlyFans – and now earns fortune*, DAILY STAR (Mar. 14, 2022, 13:21), https://www.dailystar.co.uk/love-sex/call-centre-worker-who-made-26461910 (last visited Aug. 12, 2026).

CLASS ACTION COMPLAINT
Case No. _____

011337-11/3505440 V1

48. Miles also called Fox "the first owner of the platform."[14]

49. In a podcast interview in 2022, Miles (who claimed to have 50,000 followers on OnlyFans at the time) again described how she was recruited by Fox in Los Angeles around 2018, who she referred to as the "owner of OnlyFans" before Stokely.[15]

50. On information and belief, Fox was the primary recruiter of OnlyFans Creators, utilizing the Referral Program to promote the platform from the time Stokely enlisted Fox's help until he died in 2019, an effort Fox led from Los Angeles, California.

51. Petra Ann Ouwehand, an American citizen and early director of OnlyFans, corroborated Fox's centrality to OnlyFans's growth: "By the end of 2017 … the platform took off. To expand in the U.S., said Petra, the Stokelys [including owner/co-founder Tim Stokely] relied on Bill Fox, a prominent figure in California's porn industry."[16]

52. In addition to targeting the California-based adult entertainment industry, OnlyFans also targeted another California-based industry for new OnlyFans Creators: Hollywood.

53. In a May 2020 article, Stokely was quoted about OnlyFans's recruitment of celebrity Creators: "The surprise call-out from Beyoncé on the 'Savage' remix was very exciting for us, to say the least," he said. "Her stamp of approval comes on the

---

[14] *Id.*

[15] CJ Miles and Nara Ford - The Michael Sartain Podcast, YOUTUBE (Jan. 19, 2022), https://www.youtube.com/watch?v=Sp253Yf6yv4 (last visited Aug. 12, 2026).

[16] Andrew R.C. Marshall, Echo Wang, Rosa Furneaux, Jason Szep, Linda So, *OnlyFans Exposed | Part 7: How OnlyFans turned into a global empire bent on redefining porn*, REUTERS (Dec. 28, 2024, 1:00 PM GMT) https://www.reuters.com/investigates/special-report/onlyfans-sex-origins/ (last visited Aug. 12, 2026).

-12-
CLASS ACTION COMPLAINT
Case No. _____

heels of major stars joining the platform in recent weeks, including Blac Chyna, The-Dream, Safaree Samuels, and Casanova."[17]

54. Between March and April 2020, both the Fan base and the number of Creators on the platform grew by 75%, with the site becoming widely known enough that pop icon Beyoncé mentioned the platform in a song that year—boosting its recognition even further. Over the next year, multiple "mainstream" celebrities joined the platform, introducing OnlyFans to their existing fandoms—many of whom, judging by the numbers, joined the platform as well.

55. OnlyFans also hosted multiple live events in California including OnlyFans "Meet-Up" events and launch parties.

56. By going outside the adult entertainment world, Fenix continued to strengthen its ties to California to expand its base of Fans and Creators via the Referral Program on the OnlyFans platform.

**2. A significant portion of OnlyFans's business is run from California and the United States.**

57. After the death of Bill Fox in 2019, and to bolster OnlyFans operations and ties to California, Fenix hired California-based Chief Marketing and Communications Officer Amrapali "Ami" Gan in September 2020, who lived and operated in this role in the Los Angeles, California area.

58. Gan was in this role from September 2020 to December 2021 and had significant responsibility for the strategic direction of the company and was a regular part of the executive team running the company, all while she was living in and working from California.

---

[17] Jordan Rose, *OnlyFans Sees 15 Percent Spike in Traffic Following Beyoncé's Reference on "Savage" Remix*, Complex (May 2, 2020), https://www.complex.com/music/a/j-rose/beyonce-onlyfans-reference-savage-remix-reportedly-increased-sites-traffic (last visited Aug. 12, 2026).

CLASS ACTION COMPLAINT

Case No. _____

011337-11/3505440 V1

59. Gan stated that, as Chief Marketing and Communications Officer ("CMO"), "internally, [she] was doing a lot more than probably someone in a traditional CMO role would do where [she] had exposure to all aspects of the business working closely with the former CEO who's also the founder of the company as well as with the rest of the executive team so when it came time for that succession it was a very easy transition and that's where [she] bring[s] forth this unique perspective and a lot of learnings being with the company and that's why leading the business [she] ha[s] really put [C]reators at the heart of what [OnlyFans] do[es][.]"[18]

60. A Chief Marketing and Communications Officer for a social media platform is tasked with creating and implementing strategies for attracting and increasing consumer participation and revenue generation, as well as decision-making on those strategies. At OnlyFans, this necessarily included increasing Creator and Fan enrollment and participation, including through its Referral Program.

61. Gan was OnlyFans's Chief Marketing and Communications Officer in May 2021 when Fenix breached the lifetime referral commission promise and Defendants stopped paying Referring Users their accrued commissions from the gross revenues of Creators referred pre-May 2020.

62. In December 2021, California-based Gan was promoted from Chief Marketing Officer to Chief Executive Officer of OnlyFans. Stokely personally appointed Gan to the CEO role.[19]

---

[18] Navigating Public Opinion: Running an Edgy Business - Amrapali Gan & Keily Blair (OnlyFans) & Axios, YOUTUBE (Nov. 22, 2022), https://www.youtube.com/watch?v=fgOsTxLVpzM (last visited Aug. 12, 2026).

[19] *OnlyFans Appoints Amrapali Gan as Chief Executive Officer*, PR NEWSWIRE (December 21, 2021, 9:00 ET), https://www.prnewswire.com/news-releases/onlyfans-appoints-amrapali-gan-as-chief-executive-officer-301448653.html (last visited Aug. 12, 2026).

-14-

CLASS ACTION COMPLAINT

Case No. _____

011337-11/3505440 V1

63.    Gan resided in the Los Angeles area and acted as Chief Marketing and Communications Officer and then CEO of OnlyFans from Los Angeles until 2022 when she relocated to Miami.[20]



64.    Gan lived in Los Angeles from at least 2015 to 2022, posting on Instagram in October 2024 that "[a]fter 17+ yrs living all over LA, it's always

_____

[20] Ami Gan, LINKEDIN, https://www.linkedin.com/in/amigan/recent-activity/all/ (last visited Aug. 12, 2026).

-15-

CLASS ACTION COMPLAINT

Case No. _____

011337-11/3505440 V1

bittersweet returning."[21] She reported to the Federal Election Commission in 2020 that her residence was in Los Angeles, California.

65. Beginning in 2017 with Fox's promotion of the Referral Program to recruit Creators from the adult entertainment industry, and continuing with Gan's brand-development strategy, marketing efforts, and subsequent executive leadership of OnlyFans from California that certainly encompassed some responsibility for the Referral Program, OnlyFans was able to rapidly expand its Creator base. That expansion was largely centered in Los Angeles, and, as a result, California—particularly Los Angeles—emerged as a principal hub for OnlyFans Creators and the Referral Program.

66. Additionally, many OnlyFans executives, employees, contractors, and Creators work and reside in the United States and, in particular, California.

**3. OnlyFans's banking, payment, and other operations are based in California and the United States.**

67. Since at least 2017, OnlyFans used Stripe to process Fan payments, which has its headquarters in San Francisco, California.

68. In December 2025, OnlyFans began accepting payments via PayPal, which is headquartered in San Jose, California.

69. On X, OnlyFans Merch (@OnlyFansMerch) is listed as an affiliate of OnlyFans.[22]

70. On X, OnlyFans Merch states: "The Official Account of the @OnlyFans Merch Collection."[23]

---

[21] @amrapali_gan Post, INSTAGRAM (Oct. 20, 2024), https://www.instagram.com/p/DBXmMjvJgyW/ (last visited Aug. 12, 2026).

[22] Affiliates (@OnlyFans), X, https://x.com/OnlyFans/affiliates (last visited Aug. 12, 2026).

[23] OnlyFans Merch (@OnlyFansMerch), X, https://x.com/OnlyFansMerch (last visited Aug. 12, 2026).

CLASS ACTION COMPLAINT
Case No. _____

011337-11/3505440 V1

71. On X, the OnlyFans Merch account is based in the United States.[24]

72. That account links to the Amazon U.S. OnlyFans Merch Store.[25]

73. The seller on Amazon is listed as "OF Merch," business named "OF World, LLC," with a business address in Chicago, Illinois.[26]

74. OF World, LLC is identified as a direct subsidiary of Fenix in its 2024 publicly available Annual Report, listing a business address in Wilmington, Delaware.

75. In addition to sales on Amazon, OnlyFans created a "Shop" function on its platform to enable Creators to sell products to Fans in California and worldwide.[27]

76. To do so, OnlyFans partnered with Spring, formerly known as Teespring, which was based in California.[28]

77. Spring is operated by Amaze Holdings, Inc., with its headquarters in Costa Mesa, California.[29]

78. Starting in its Annual Report issued in 2022, Fenix began reporting its revenue in U.S. dollars rather than British pounds. Fenix's revenue earned from the United States more than doubled from 2020 to 2021 ($261 million to $648 million).

---

[24] About this account (@OnlyFansMerch), X, https://x.com/OnlyFansMerch/about (last visited Aug. 12, 2026).

[25] OnlyFans Merch Store, AMAZON, https://www.amazon.com/stores/page/5E2216F9-1142-4638-B770-5710E7C0FF84?ingress=3 (last visited Aug. 12, 2026).

[26] About Seller OnlyFans Merch Store, AMAZON, https://www.amazon.com/sp?ie=UTF8&seller=A3VG1XG70665KI&asin=B0FQGPLDJR&ref_=dp_merchant_link&isAmazonFulfilled=1 (last visited Aug. 12, 2026).

[27] AK, *Introducing Spring Store Integration*, ONLYFANS (Nov. 7, 2022), https://blog.onlyfans.com/onlyfans-spring-store-feature/ (last visited Aug. 12, 2026).

[28] Teespring, LINKEDIN, https://www.linkedin.com/company/teespring/ (last visited Aug. 12, 2026).

[29] Company Information, AMAZE, https://ir.amaze.co/company-information (last visited Aug. 12, 2026).

CLASS ACTION COMPLAINT

Case No. _____

011337-11/3505440 V1

79.     Fenix's publicly available Annual Reports show that from 2020 to 2024, approximately 64–73% of its revenue came from the United States. For example, at the end of fiscal year 2021, Fenix reported $648 million in revenue earned in the United States.

80.     On information and belief, California Creators and Fans generate more revenue for OnlyFans than any other state in the United States, and at least thousands of Referring Users are in the United States.

81.     To the extent the Court finds the allegations herein insufficient to exercise personal jurisdiction over Defendants, Plaintiffs seek leave to conduct their own jurisdictional discovery.

**B.     Defendant Fenix's OnlyFans Referral Program**

     **1.     Fenix promised Plaintiffs and Class members lifetime commissions on Referred Creators' gross revenues through its Referral Program.**

82.     According to Fenix's publicly available Annual Reports, OnlyFans grew rapidly from only 13 million subscribers in 2019 to 188 million in 2021. In its Annual Report issued in 2021, Fenix stated "the majority [of Fans] are based in the USA."

83.     Transactions on the platform in 2020 increased by 553% to $2.4 billion.[30]

84.     OnlyFans founder Tim Stokely credited the Referral Program for this enormous growth.[31] In a British GQ article, Stokely is quoted as saying:

---

[30] Charlotte Colombo, *The history of OnlyFans: how the controversial platform found success and changed online sex work*, BUSINESS INSIDER (Sept. 14, 2021 8:53 AM MT), https://www.businessinsider.com/what-is-onlyfans-banning-content-work-porn-ban-history-sex-2021-9 (last visited Aug. 12, 2026).

[31] Jemima McEvoy, *Porn Profits: How OnlyFans became a $4 billion goldmine for its secretive owner*, FORBES AUSTRALIA (Oct. 2, 2024), https://www.forbes.com.au/news/billionaires/porn-profits-how-onlyfans-became-a-4-billion-goldmine/ (last visited Aug. 12, 2026).

-18-

CLASS ACTION COMPLAINT

Case No. _____

011337-11/3505440 V1

> *…**how was I going to get users onto this marketplace? [That problem was] solved, in the case of OnlyFans, by creating a referral programme, which incentivised third parties to bring creators onto the platform.**[32]*

85.    By the end of the fiscal year 2020, Fenix reported the number of Creators on OnlyFans had spiked to more than 1.6 million (up from 348,000 in 2019).

86.    If even just 5% of these 1.6 million Creators (as of 2020) resided in California, that would be 80,000 Creators. And even if a small percentage of those Creators were also Referring Users—like Plaintiffs were—it would still be thousands of people. A reasonable inference based on the California connections indicates much higher numbers.

87.    The Referral Program's promise, first publicized in 2016, to pay participants "5% commission (lifetime) on all income earned by any user who joins OnlyFans via your referral link"[33] was deeply embedded in Fenix's efforts and business plan. Fenix repeatedly reaffirmed this promise throughout the OnlyFans website and marketing. In the FAQ explaining how the program works, it stated: "It's really simple. You earn 5% (LIFETIME) of all income made by any user that joins OnlyFans.com via your referral URL."[34]

88.    The FAQ explained how to participate in the Referral Program: "Simply click the 'My Referrals' tab on your dropdown menu, which will navigate you to

---

[32] Thomas Barrie, *OnlyFans CEO Tim Stokely's tips for success*, BRITISH GQ (Mar. 16, 2021), https://www.gq-magazine.co.uk/lifestyle/article/onlyfans-ceo-tim-stokely (last visited Aug. 12, 2026).

[33] *Become a Partner*, ONLYFANS, https://onlyfans.com/partners/ [https://web.archive.org/web/20170120234707/https://onlyfans.com/partners/] (archived Jan. 20, 2017) (last visited Aug. 12, 2026).

[34] *FAQ*, ONLYFANS, https://onlyfans.com/faq/ [https://web.archive.org/web/20170120221823/https://onlyfans.com/faq/] (archived Jan. 20, 2017) (last visited Aug. 12, 2026).

-19-
CLASS ACTION COMPLAINT
Case No. _____

011337-11/3505440 V1

your Referrals page. This page contains your own unique referral URL. You can either send this URL out to your friends manually or (if you have a Twitter account connected) you can click the 'Tweet Referral URL' button, which will automatically send out a tweet to all of your followers containing your referral URL and a short promotional video, explaining to the viewer why they should sign up to OnlyFans."[35]

89.     Fenix linked this promotional video on the "FAQ" and "Partners" pages on the OnlyFans website. OnlyFans also posted the same video to YouTube on September 2, 2016, which has been viewed over 55,000 times.[36]

90.     The promotional video made the same promise to pay Referring Users 5% of the revenues produced by their Referred Creators for life. Screenshots from the video are below.



---

[35] *Id.*

[36] Only Fans, *Become an OnlyFans Partner*, YOUTUBE (Sept. 2, 2016), https://www.youtube.com/watch?v=MyMWcngbMPo (last visited Aug. 12, 2026).

CLASS ACTION COMPLAINT

Case No. _____

011337-11/3505440 V1





CLASS ACTION COMPLAINT

Case No. _____



91. On the FAQ page, Fenix stated that referral commissions would be paid "on the 1st day of the calendar month, directly into your bank account."[37] This obligation to pay referral commissions was a recurring, divisible payment obligation arising each time a Referred Creator generated qualifying revenue.

92. Fenix promoted the Referral Program on the OnlyFans "Partners" page, saying:

**Become a Partner**

Are you a webmaster, agent, blogger, entrepreneur or social influencer with a high following? Then why not turn those followers into money in the bank, with our new referral program. You receive 5% commission (lifetime) on all income earned by any user who joins OnlyFans via your referral link. So join for free, post your referral link to your followers and then sit back, relax and watch your earnings grow!

Unlike other well known referral programs this is not a one off [sic] payment. This is every user, every payment, every month... LIFETIME!

---

[37] *FAQ*, ONLYFANS, https://onlyfans.com/faq/ [https://web.archive.org/web/20170120221823/https://onlyfans.com/faq/] (archived Jan. 20, 2017) (last visited Aug. 12, 2026).

CLASS ACTION COMPLAINT
Case No. _____

011337-11/3505440 V1

*You've worked hard building your business and growing those followers... Now it's pay day!.* [sic][38]

93.    The "Partners" page went on to say:

Becoming a partner is really easy. You just sign up to OnlyFans for free and then click the 'My Referrals' link on your menu. You will see your referral link, which is all you need to start recruiting and become a partner.

Our referral program seeks genuine partners, to share in our growth and and [sic] to share future profits...

Partners are paid on the first calendar day of each month, directly into their bank account. All earnings are categorised per user and we are continually adding new tools and features to provide our partners with the tools and marketing material that will enhance their experience and earning potential.[39]

94.    The following graphic was also posted on the "Partners" page of the OnlyFans website:



Again, Fenix reaffirmed and promoted the lifetime referral commissions on the "How it Works" page:

---

[38]    *Become a Partner*, ONLYFANS, https://onlyfans.com/partners/ [https://web.archive.org/web/20170120234707/https://onlyfans.com/partners/] (archived Jan. 20, 2017) (last visited Aug. 12, 2026).

[39] *Id.*

-23-

CLASS ACTION COMPLAINT

Case No. _____

**Become a partner**

Are you a webmaster, entrepreneur or social influencer with a high following? Then why not turn those followers into money in the bank, with our new referral program. You receive 5% commission (LIFETIME) an [sic] all income earned by users who join via your link. So join for free, post your referral link to your followers and then sit back, relax and watch your earnings grow![40]

95.     When a new account was created using a Referring User's referral link, the Referring User would receive an email notification providing the name and account of the Referred Creator. In those emails, Fenix *again* affirmed its promise of lifetime commissions. Below is a screenshot of one of many such emails Plaintiff Hardesty received when a new Creator signed up using her referral link.



---

[40]     *How it Works*, ONLYFANS, https://onlyfans.com/how/ [https://web.archive.org/web/20170121060418/https://onlyfans.com/how/] (archived Jan. 21, 2017) (last visited Aug. 12, 2026).

-24-

CLASS ACTION COMPLAINT

Case No. _____

011337-11/3505440 V1

96.    Defendants take 20% of all Creators' revenues made on OnlyFans and the remaining 80% goes to Creators. For every $1 earned, Defendants keep $.20 and the Creator keeps $.80.

97.    The 5% commission paid to Referring Users under the Referral Program is "deducted from the OnlyFans' [sic] fee and not from the income of the [Referred Creator]."[41] Therefore, on Referred Creators' accounts, OnlyFans would only make 15% of every $1 spent and was giving up a substantial portion of its revenue—the 5% commission was 25% of Fenix's share of revenues—to Referring Users under the Referral Program.

98.    Fenix's promises, made on the OnlyFans website and in its marketing, did not require a separate agreement for the Referral Program from approximately 2016–2017. During this period, it solicited Referring Users through a unilateral offer that was accepted by an act: Referring Users would accept by getting prospective Creators to sign up through Referring Users' unique referral links.

99.    Beginning in or around March 2018, Fenix added the Referral Program's terms into its Terms of Service. These terms tracked the advertised offer: the 5% referral commissions would be for life, or for the "total income earned by the [R]eferred [Creator]."[42]

---

[41] *See, e.g.*, March 2018 Terms of Service at 15.2, ONLYFANS, www.onlyfans.com/terms [https://web.archive.org/web/20180323195358/https://onlyfans.com/terms/] (archived Mar. 23, 2018) (last visited Aug. 12, 2026).

[42] *See, e.g.*, March 2018 Terms of Service at 15.2, ONLYFANS, www.onlyfans.com/terms [https://web.archive.org/web/20180323195358/https://onlyfans.com/terms/] (archived Mar. 23, 2018) (last visited Aug. 12, 2026); December 2018 Terms of Service at 15.2, ONLYFANS, www.onlyfans.com/terms [https://web.archive.org/web/20181228000353/https://onlyfans.com/terms/] (archived on Dec. 28, 2018) (last visited Aug. 12, 2026).

-25-
CLASS ACTION COMPLAINT
Case No. _____

100.   Defendant Fenix never reserved the right to revoke the Referral Program terms retroactively or negate the rights vested in the Referring Users when they accepted the offer by referring Creators, nor would that be consistent with the offer. The contracts at issue here were all formed and became binding before Fenix dropped its lifetime referral commissions promise, and Plaintiffs and the class provided consideration by securing Creators who joined using their unique referral links.

101.   Even in 2019, the FAQ section of the OnlyFans website promoted that the 5% commission was for life ("LIFETIME"), along with explanations on how to participate, how to get paid, and answering other questions.[43]

102.   Similarly, Fenix's advertising and marketing in 2019 about the Referral Program on the OnlyFans website was consistent with the layout and language from 2017.[44]

103.   Fenix made its promise of lifetime referral commissions under the Referral Program from inception of the program until May 1, 2020. Likewise, from inception of the program until May 1, 2021, Fenix—and later, with the assistance of Fenix Internet—paid monthly referral commissions to Plaintiffs and putative class members from the gross revenues of the Creators they referred to OnlyFans before May 1, 2020.

104.   Defendants tracked referral commissions in real time based on the gross revenues of the Referred Creators. Defendants calculated these commissions as a specific, identifiable percentage of the Referred Creators' gross revenues.

---

[43] *Help & Support: Referral Program*, ONLYFANS, https://onlyfans.com/faq [https://web.archive.org/web/20190426081845/https://onlyfans.com/faq]  (archived Apr. 26, 2019) (last visited Aug. 12, 2026).

[44] *Become a Referrer*, ONLYFANS, https://onlyfans.com/referrals/ [https://web.archive.org/web/20190330113018/https://onlyfans.com/referrals/] (archived Mar. 30, 2019) (last visited Aug. 12, 2026).

-26-
CLASS ACTION COMPLAINT

Case No. _____

011337-11/3505440 V1

105. Defendants routinely and recurrently paid these referral commissions to Referring Users on the first day of every month so long as the commissions exceeded the $20 threshold amount. Each monthly payment included the accrued referral commissions from the prior month (e.g., April 2020 commissions paid on May 1, 2020), and any accrued commissions totaling less than $20 would be rolled over and paid in the next month where the total referral commissions exceeded $20.

106. Plaintiffs and putative class members could contemporaneously view their referral commission earnings and payments in their OnlyFans accounts.

### 2. Fenix reneges on its lifetime referral commissions promise.

107. In March 2020, OnlyFans reported a 75% increase in new sign-ups and reported that the site gained around 150,000 new users every 24 hours.[45]

108. On May 1, 2020, OnlyFans emailed users to announce that it was changing the terms of its Referral Program. From that date forward, the 5% referral commissions would be limited to just the first 12 months of the Referred Creator's gross revenues, but if the referral originated before May 1, 2020, then the referral commissions would only continue for one year from that date, until May 1, 2021.

109. Referral commissions were also limited—for the first time—to the first $1,000,000 earned by each Creator, effectively capping commissions at $50,000 per Referred Creator.

110. Fenix's changes to the Referral Program applied to Referring Users who referred Creators and earned commissions before May 1, 2020, under the lifetime 5% referral commissions promise. Such Referring Users would no longer receive lifetime commissions from those referrals, only commissions until May 1, 2021.

---

[45] Franki Cookney, *Cam Site Traffic Is Booming As People In Quarantine Look For Sexy Companionship*, FORBES (Apr. 29, 2020, 4:23pm EDT), https://www.forbes.com/sites/frankicookney/2020/03/31/people-look-to-cam-sites-for-sexy-interaction-in-self-isolation-but-is-there-money-to-be-made/#11dabce6451a (last visited Aug. 12, 2026).

CLASS ACTION COMPLAINT

Case No. _____

011337-11/3505440 V1

111. According to the email, OnlyFans attributed its Referral Program changes to the growth it saw during the COVID-19 pandemic and "the important decision to invest even more resources in our infrastructure, our technology and our support teams, so that we can continue to grow as the top platform for Creators to earn money."[46] In other words, it unilaterally decided to change the terms of the deal.

112. Plaintiffs Hardesty and Heidewald were drawn to the Referral Program because of the promise for lifetime commissions.

113. Creator Arron Lowe stated in an interview with Vice that he "only referred people because of the lifetime five percent," and that the "referral system is the only reason OnlyFans became a household name and, without it, there wouldn't be an OnlyFans."[47] Lowe claimed he made $50,000 from one referral alone, but under the new terms, his referral commissions would drop a few thousand dollars per month.[48]

114. Other Creators, including Plaintiffs Hardesty and Heidewald, used their YouTube accounts to promote the Referral Program.[49]

115. Upset by these retroactive changes to the OnlyFans Referral Program, Lowe created a petition to stop its implementation, which obtained 361 signatures in just a few days.[50] The petition eventually received 1,689 signatures in total, but that did not stop Fenix from reneging on its promise of lifetime commissions.

---

[46] Samantha Cole, *OnlyFans Is Cutting Referral Bonuses Because So Many People Are Signing Up*, Vice (May 4, 2020, 11:02 AM), https://www.vice.com/en/article/onlyfans-cutting-creator-referral-program-bonuses-payout/ (last visited Aug. 12, 2026).

[47] *Id.*

[48] *Id.*

[49] *See id.*

[50] *Id.*

CLASS ACTION COMPLAINT

Case No. _____

011337-11/3505440 V1

## C.    Plaintiffs' Stories

116.   Plaintiff Heidewald joined the OnlyFans platform in October 2019, and Plaintiff Hardesty joined in November 2019. At that time, Fenix's representations and advertisements about the Referral Program and the 5% lifetime referral commissions were substantively the same as alleged herein.

117.   Plaintiffs Hardesty and Heidewald recall seeing Fenix's representations about the lifetime referral commissions and reading Fenix's TOS in creating their OnlyFans accounts.

118.   Plaintiff Heidewald lived in Los Angeles, California and Plaintiff Hardesty lived in Huntington Beach, California when they joined OnlyFans and participated in and generated commissions under the Referral Program, and when Fenix revoked the terms of the Referral Program.

119.   Plaintiffs Hardesty and Heidewald relied on Fenix's Referral Program promise that they would make lifetime 5% commissions on Referred Creators' gross revenues by participating as Referring Users.

120.   As a result, Plaintiffs Hardesty and Heidewald spent significant time promoting their unique OnlyFans referral links on social media, including through YouTube, Twitter (now X), and Instagram, and by word of mouth. Plaintiffs created and posted YouTube videos offering advice about how to join (using their referral links), build a profile, and generate income on OnlyFans. They provided similar advice and mentorship to individual prospective Creators that reached out to them virtually.

121.   Relying on Fenix's promise to pay these lifetime referral commissions, before the May 1, 2020 terms change, Plaintiff Heidewald referred more than 2,200 Creators and Plaintiff Hardesty referred more than 4,500 Creators to OnlyFans using their unique referral links. As a result, Plaintiffs' referral commissions increased steadily month by month.

-29-

CLASS ACTION COMPLAINT

Case No. _____

011337-11/3505440 V1

122.   Plaintiffs' referral commissions accrued and were paid monthly so long as they exceeded the minimum $20 payout threshold. On the first day of each month, Defendant Fenix issued payment invoices to Plaintiffs for their accrued Referral Program commissions from the prior month, and Defendant Fenix Internet deposited the commissions into Plaintiffs' bank accounts. Defendant Fenix Internet collected the OnlyFans 20% fee from Referred Creators' gross revenues and then paid Plaintiffs their 5% referral commission from that fee.

123.   Plaintiffs' bank statements identify Fenix Internet as the entity that deposited these Referral Program commissions into their bank accounts.

124.   One of the Creators that Plaintiff Heidewald referred to OnlyFans before Fenix reneged on its lifetime commissions promise began to increase her popularity and revenue in the last few months that Heidewald received referral commissions from her gross revenues. On information and belief, Plaintiff Heidewald's high-earning Referred Creator continued to operate and generate revenue on OnlyFans until at least 2023, and some of Heidewald's other Referred Creators are likely still generating revenues on OnlyFans. Likewise, on information and belief, certain of Plaintiff Hardesty's Referred Creators are still active and generating revenues on OnlyFans.

125.   Because Fenix breached the contract and Defendants stopped paying lifetime referral commissions, Plaintiffs were denied their accrued 5% commissions from these Referred Creators after May 1, 2021. In fact, Heidewald's highest and Hardesty's second-highest payouts came on May 1, 2021—the last period that they were paid commissions for Creators they referred to OnlyFans under Fenix's lifetime commission promise.

126.   Plaintiff Hardesty's referral commissions went from just $2.18 in February 2020 (from two referred Creators) to $1,538.82 in March 2020 after she promoted the Referral Program on her YouTube page. A month later, her referral

-30-

CLASS ACTION COMPLAINT

Case No. _____

011337-11/3505440 V1

commissions jumped to $4,550 (from more than 4,000 Referred Creators), which was paid out to her on May 1, 2020.

127. Plaintiff Heidewald's referral commissions went from just $41.10 in November 2019 to $1,292.54 in April 2020 after she promoted the Referral Program on her YouTube page. By the end of 2020, Heidewald's referral commissions were around $2,000 a month.

128. From January to April 2021, Plaintiff Heidewald averaged more than $3,200 and Plaintiff Hardesty averaged more than $3,300 in commissions per month from the Referral Program alone.

129. Plaintiff Heidewald earned more than $28,000 in referral commissions between December 2019 and April 2021. Plaintiff Hardesty earned nearly $47,000 in referral commissions between February 2020 and April 2021.

130. After May 1, 2021, Plaintiff Heidewald's earnings from the Referral Program decreased to $45 in May 2021 and $0.44 in June 2021, and Plaintiff Hardesty's decreased to $276 in May 2021 and $76 in June 2021.

131. The OnlyFans platform previously permitted Referring Users like Plaintiffs to see how much referral commission they made off individual Referred Creators' gross revenues, but that feature has since been disabled, likely in conjunction with Fenix's revocation of its lifetime commission promise.

132. At least one Creator (but likely many more) referred by Plaintiffs Hardesty and Heidewald, respectively, was still active and generating revenue on OnlyFans within the applicable limitations period. On information and belief, some of these Referred Creators are still active and earning on the platform today.

133. But for Fenix's breaches of the lifetime referral commissions promise, Plaintiffs Hardesty and Heidewald would have received additional referral commissions within the applicable limitations period and would still be entitled to referral commissions from their Referred Creators still active on OnlyFans.

-31-
CLASS ACTION COMPLAINT

Case No. _____

011337-11/3505440 V1

134. Plaintiffs seek damages for all commissions accrued and owing within the applicable limitations period on the gross revenues of Creators they referred under Fenix's lifetime 5% referral commissions promise.

## V.    CLASS ACTION ALLEGATIONS

135. Plaintiffs bring this action under Federal Rule of Civil Procedure 23(b)(2) and (b)(3) on behalf of themselves and all others similarly situated.

136. Plaintiffs seek to represent a nationwide class of OnlyFans's Referral Program participants ("Nationwide Class" or "Class"), which is defined as:

> All persons residing in the United States whose unique OnlyFans referral link was used by at least one person who joined OnlyFans as a Creator before May 1, 2020, where that Referred Creator generated revenue on OnlyFans at any time after May 1, 2021.

137. Plaintiffs also seek to represent a California subclass ("California Subclass" or "Subclass"), which is defined as:

> All members of the Nationwide Class who resided in California while participating in the Referral Program, or who currently reside in California.

138. Excluded from the Class and the California Subclass (the members of which are collectively referred to as "Class members") are Defendants and their agents, officers, directors, legal representatives, heirs, successors and wholly or partly owned subsidiaries or affiliated companies; Class counsel and their employees; the judicial officers and their immediate family members and associated court staff assigned to this case, and all persons within the third degree of relationship to any such persons.

139. Plaintiffs reserve the right to amend or modify the Class and Subclass definitions after having had an opportunity to conduct discovery.

**A.    The Requirements of Rule 23(a)(1)-(4) are Satisfied.**

140. *Numerosity.* The Class is so numerous that joinder of all members is unfeasible and impracticable. OnlyFans has signed up millions of Creators

-32-
CLASS ACTION COMPLAINT

Case No. _____

011337-11/3505440 V1

worldwide, and on information and belief, the Referral Program was so widely promoted between 2016 and Defendant Fenix's revocation of its lifetime referral commissions promise in May 2020, that any reasonable estimate indicates there are at least several thousand Class members. The California Subclass is also sufficiently numerous: as alleged above, even a conservative estimate of California-based Referring Users indicates thousands of Subclass members. Class members are readily identifiable from Defendants' own business records. Defendants' systems recorded each referral in real time, including the identity of the Referring User, the identity and sign-up date of each Referred Creator, and the commissions calculated and paid on each Referred Creator's earnings—as demonstrated by the referral notification emails Defendants sent to Referring Users, the referral earnings dashboards Defendants maintained, and Defendants' administration of commission payments (including the revised program's 12-month commission period, which requires tracking each Referred Creator's join date and referral attribution).

141. ***Commonality.*** Common questions of law and fact exist as to all Class members, which include, but are not limited to:

      a. Whether Defendant Fenix promised to pay 5% lifetime referral commissions from Referred Creators' gross revenues to Plaintiffs and Class members who signed up new Creators via their unique referral links, and whether this promise was clear and unambiguous in its terms;

      b. Whether Plaintiffs and Class members accepted Defendant Fenix's offer of 5% lifetime referral commissions from Referred Creators' gross revenues by promoting and signing up new Creators via their unique referral links;

      c. Whether Defendant Fenix's promise of 5% lifetime referral commissions from Referred Creators' gross revenues to Plaintiffs

-33-

CLASS ACTION COMPLAINT

Case No. _____

and Class members constituted consideration in exchange for Plaintiffs' and Class members' promotion and assistance in enrolling new Creators who in turn generated revenue for Defendants;

d.   Whether an enforceable contract existed between the Class and Defendant Fenix;

e.   Whether Defendant Fenix breached, and continues to breach, its contracts for payment of 5% lifetime referral commissions with Plaintiffs and the Class members;

f.   Whether Plaintiffs and Class members reasonably relied on Defendant Fenix's promise to pay them lifetime referral commissions from their Referred Creators' gross revenues;

g.   Whether Defendant Fenix reasonably and foreseeably expected Plaintiffs and Class members to rely on its promise to pay lifetime referral commissions;

h.   Whether Plaintiffs and Class members had the right to receive and possess 5% commission from the gross revenues of their Referred Creators for life;

i.   Whether Defendants took or substantially interfered with Plaintiffs' and Class members' property rights by intentionally taking possession of the money owed to them from referred accounts, and by ceasing payments to them for their accrued commissions from these referred accounts;

j.   Whether Defendants are liable under each cause of action alleged herein;

k.   Whether Plaintiffs and Class members were damaged and, if so, the appropriate measure of damages; and

-34-
CLASS ACTION COMPLAINT
Case No. _____

011337-11/3505440 V1

l.      Whether Plaintiffs and Class members are entitled to damages, declaratory relief, and other relief.

142.    *Typicality.* Plaintiffs' claims are typical of the claims of other Class members in the Class, as they arise out of Defendants' uniform and pervasive conduct, involve the same legal theories, and challenge the same practices and conduct of Defendants. Plaintiffs and Class members were subjected to the same contract terms and practices, hold the same rights, are entitled to the same legal and declaratory relief, have suffered the same impact and injury, and sustained similar damage by Defendant Fenix's breaches of its promise and Defendants' failure to pay 5% lifetime commissions from Referred Creators' gross revenues. Plaintiffs' claims are likewise typical of the California Subclass, of which both Plaintiffs are members: each resided in California at the time she participated in the Referral Program.

143.    *Adequacy.* Plaintiffs and their counsel will fairly and adequately represent the interests of the Class they seek to represent. Plaintiffs have no interests antagonistic to, or in conflict with, the interests of other Class members. Plaintiffs' counsel is highly experienced in the prosecution of consumer class actions and complex commercial litigation, capable of providing the financial resources needed to litigate this matter to conclusion and has litigated other consumer matters in a class context.

**B.     The Requirements of Rule 23(b)(2) are Satisfied: Defendants' Conduct Generally Applies to the Class, Making Classwide Declaratory Relief Appropriate.**

144.    To certify a declaratory relief class under Federal Rule of Civil Procedure 23(b)(2), Plaintiffs must show "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."

CLASS ACTION COMPLAINT
Case No. _____

011337-11/3505440 V1

145. Here, Defendants' actions and failures to act are systemic and uniform across the Class, as are the Terms of Service, Referral Program representations, and other contract documents. The relief the Class seeks would require declaratory relief that Defendant Fenix's promise to pay 5% lifetime referral commissions is enforceable as a matter of law despite Defendants ceasing such payments on May 1, 2021, for accounts referred before May 1, 2020.

146. Classwide declaratory relief is appropriate under Federal Rule of Civil Procedure 23(b)(2) because Defendants have acted on grounds that apply generally to Class members, and inconsistent adjudications with respect to the enforceability of Defendant Fenix's promise would establish incompatible standards and substantially impair or impede the ability of Class members to protect their interests. Classwide relief and Court supervision under Rule 23 assures fair, consistent, and declaratory treatment and protection of all Class members, and uniformity and consistency in determining that an enforceable contract and obligation to pay referral commissions existed between the Class and Defendants with the promise made by Defendant Fenix before May 1, 2020.

**C.      The Requirements of Rule 23(b)(3) are Satisfied.**

147. *Predominance.* Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because the questions of law or fact common to Class members predominate over any questions affecting only individual members. "[T]he predominance analysis under Rule 23(b)(3) focuses on the relationship between the common and individual issues in the case, and tests whether the proposed class is sufficiently cohesive to warrant adjudication by representation." *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 964 (9th Cir. 2013) (citations and internal quotations omitted). Predominance "does not require a plaintiff seeking class certification to prove that each element of their claim is susceptible to classwide proof, so long as one or more common questions predominate." *Castillo v. Bank of Am., NA*, 980 F.3d

-36-
CLASS ACTION COMPLAINT
Case No. _____

011337-11/3505440 V1

723, 730 (9th Cir. 2020) (citations and internal quotations omitted). Plaintiffs must also present a method showing "that damages are capable of measurement on a classwide basis." *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013). Plaintiffs have met all these requirements. In this case, liability would be determined by common representations, acts, promises, and breaches, the proof of which every Class member could use to prove liability. Damages could be determined using the records of Defendants, even though individual differences in damages does not preclude certification.

148. ***Superiority.*** A class action is superior to all other available methods for fairly and efficiently adjudicating the claims of Plaintiffs and Class members. Plaintiffs and Class members—many of whom are unaware of their rights—have been harmed by Defendant Fenix's breaches and Defendants' failure to pay accrued and owing commissions.

149. Defendants acted uniformly with respect to Plaintiffs and Class members. Defendants' actions treated consumers as a Class with which Defendant Fenix contracted to pay lifetime referral commissions and then Defendant Fenix—with the assistance of Defendant Fenix Internet—breached (and continues to breach) that contract. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Plaintiffs and Class members have all suffered economic harm and damage because of Defendants' unlawful and wrongful conduct, which was directed toward Class members and the public, rather than specifically or uniquely against any individual Class member.

150. On information and belief, there is currently no pending litigation regarding Defendants' revocation of the Referral Program's lifetime commission promise. This class action will reduce the possibility of repetitious litigation relating to Defendants' wrongful actions and provides an efficient mechanism for adjudication for Class members.

-37-
CLASS ACTION COMPLAINT

011337-11/3505440 V1

151. Absent a class action, most Class members would find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the small size of individual Class members' claims, it is unlikely that Class members could individually afford to seek legal redress for Defendants' misconduct.

152. Class treatment in this Court, where Defendant Fenix contracted with and agreed to pay Plaintiffs and Class members lifetime referral commissions and, with the assistance of Defendant Fenix Internet, breached that contract and obligation, will conserve the resources of the courts and the litigants, and will promote consistency and efficiency of adjudication by providing common answers to the common questions of conduct, offer, acceptance, consideration, and breach that predominate in this action.

153. Because this case involves common conduct by Defendants and all Class members have suffered the same harm, there are no obvious difficulties in managing this case as a classwide action.

## VI.   CONTINUOUS ACCRUAL OF PAYMENT OBLIGATIONS

154. Plaintiffs allege a continuous accrual theory. Plaintiffs do not seek to revive time-barred shortfalls, but each short payment or nonpayment falling within the applicable limitations period is independently actionable, even if Defendants began the same underpayment practice earlier. Defendants' obligation to pay referral commissions was a recurring, divisible payment obligation that arose each time a Referred Creator generated qualifying revenue and referral compensation became due. Defendants' failure to pay the full amount owed was not a single completed breach and conversion of funds occurring only once, but a series of separately accruing breaches and conversions of funds. Each instance in which Defendants paid less than the amount required under the Referral Program, or failed to pay at all,

-38-
CLASS ACTION COMPLAINT
Case No. _____

011337-11/3505440 V1

constituted a new distinct breach and conversion of funds that triggered a new limitations period as to that payment obligation.

## VII.   CAUSES OF ACTION

### COUNT I:  BREACH OF CONTRACT
### (Alleged as to Defendant Fenix only)

155. Plaintiffs reallege and incorporate by reference all preceding paragraphs.

156. Defendant Fenix's promise of 5% lifetime commissions on Referred Creators' gross revenues was an offer for an act or performance, made through OnlyFans's online promotional materials and later also through its Terms of Service, that Plaintiffs and Class members accepted by performing and promoting and referring new Creators to join OnlyFans. This constitutes a contract between Defendant Fenix and Plaintiffs and Class members.

157. Defendant Fenix's representations on the OnlyFans platform, through its affiliates, on social media (and elsewhere), and through its Terms of Service, substantively made the same promise to participants of the Referral Program: that Defendant Fenix would pay Referring Users 5% of the gross revenues produced by their Referred Creators on OnlyFans for life. Plaintiffs and Class members performed their contractual obligations by using their unique referral links to promote OnlyFans and facilitate other Creators to join OnlyFans and generate revenue, complying with all conditions in the contract.

158. Once Plaintiffs and Class members performed by referring new Creators to OnlyFans and such Referred Creators began generating revenue on the platform, Defendant Fenix's promise to pay lifetime commissions from Referred Creators' gross revenues could not be unilaterally revoked or modified until complete. *See Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 791 n.8 (9th Cir. 2012);

011337-11/3505440 V1

*Sateriale v. R.J. Reynolds Tobacco Co.*, 2014 WL 7338881, at *8 (C.D. Cal. Dec. 19, 2014).

159. Defendant Fenix performed its contractual obligations until May 1, 2021, by paying Plaintiffs and Class members a 5% commission on Referred Creators' gross revenues, except for those commissions capped at $50,000 under Fenix's May 2020-imposed commissions cap, which would mean an earlier breach.

160. Defendant Fenix revoked the Referral Program's lifetime commission terms on May 1, 2020, limiting referral commissions to 12 months after the Referred Creator signed up and limiting referral commissions to the first $1,000,000 earned by each Referred Creator. The revised terms also applied the new 12-month commissions period to all referrals originating before May 1, 2020, meaning Plaintiffs and Class members would only earn referral commissions from those Referred Creators' gross revenues until May 1, 2021.

161. Defendant Fenix unilaterally altered the contract with Plaintiffs and Class members and retroactively applied the revised terms to referral accounts that existed before May 1, 2020.

162. Defendant Fenix's conduct constitutes a recurring and ongoing breach of its contract with Plaintiffs and Class members by revoking the lifetime commissions promise under the Referral Program as to the gross revenues of Creators referred before May 1, 2020.

163. Defendant Fenix breached its contract after May 1, 2021, and continues to breach its contract with Plaintiffs and Class members every month thereafter when it fails to pay them their accrued 5% commissions for life on the gross revenues of Creators that Plaintiffs and Class members referred to OnlyFans before May 1, 2020.

164. Defendant Fenix's breaches caused, and continue to cause, Plaintiffs and Class members damages in an amount to be proven at trial.

CLASS ACTION COMPLAINT

011337-11/3505440 V1

165. Plaintiffs and Class members seek damages for all commission payments owed on their Referred Creators' gross revenues under Defendant Fenix's lifetime 5% referral commissions promise that accrued within the applicable limitations period.

**COUNT II:　PROMISSORY ESTOPPEL**
**(Plead in the alternative to Count I)**
**(Alleged as to Defendant Fenix only)**

166. Plaintiffs reallege and incorporate by reference all preceding paragraphs.

167. Plaintiffs and the Class plead this count in the alternative to their breach of contract claim.

168. Defendant Fenix clearly and unambiguously promised, through OnlyFans's online promotional materials, its affiliates, its social media, and later its Terms of Service, that under its Referral Program, it would pay Plaintiffs and Class members 5% of the gross revenues produced by their Referred Creators on OnlyFans for life.

169. This promise described what Plaintiffs and Class members would receive by participating in the Referral Program (i.e., promoting and facilitating the enrollment of new Creators on OnlyFans via Plaintiffs' and Class members' unique referral links). Defendant Fenix created the Referral Program and its lifetime referral commissions promise, and promoted this program and promise throughout various channels, including on the OnlyFans website (i.e., the Partner, How it Works, and FAQ webpages), OnlyFans's social media accounts and its affiliates' social media accounts, and in the OnlyFans Terms of Service.

170. Plaintiffs and Class members relied on Defendant Fenix's promise of lifetime referral commissions in promoting their unique referral links on social media platforms and elsewhere.

-41-
CLASS ACTION COMPLAINT

011337-11/3505440 V1

171. Plaintiffs and Class members reasonably relied on Defendant Fenix's promise of lifetime referral commissions because Defendant Fenix clearly, unambiguously, and repeatedly affirmed and promoted the promise throughout its marketing and social media accounts and affiliates, highlighting the uniqueness of the Referral Program. For example, Defendant Fenix stated in several places: "Unlike other well known [sic] referral programs this is not a one off [sic] payment. This is every user, every payment, every month… LIFETIME!" Plaintiffs and Class members also reasonably relied on Defendant Fenix's promise of lifetime referral commissions because Defendant Fenix initially paid these commissions until it later breached the lifetime referral commission promise.

172. Defendant Fenix reasonably and foreseeably expected Plaintiffs and Class members to rely on its promise of lifetime referral commissions to increase their profits and expand the OnlyFans platform.

173. Plaintiffs and Class members were injured, and continue to be injured, by their reliance on Defendant Fenix's promise of lifetime referral commissions and suffered damages in an amount to be proven at trial.

## COUNT III:  CONVERSION

### (Alleged as to both Defendants Fenix and Fenix Internet)

174. Plaintiffs reallege and incorporate by reference all preceding paragraphs.

175. Plaintiffs and Class members owned and had the right to immediate possession of the referral commissions that accrued each month on the gross revenues of the Creators they referred to OnlyFans before May 1, 2020. This right arose from Plaintiffs' and Class members' fully performed referrals under the Referral Program.

176. The referral commissions owed to Plaintiffs and Class members constitute specific, identifiable sums, calculated as 5% of each Referred Creator's gross revenues, that Defendants tracked, calculated, and previously disbursed

-42-
CLASS ACTION COMPLAINT

Case No. _____

011337-11/3505440 V1

monthly, and that are traceable to identified Referred Creator accounts within Defendants' systems.

177.   Defendants substantially interfered with Plaintiffs' and Class members' property rights by intentionally taking possession of the money owed to Plaintiffs and Class members from the gross revenues of the Creators they referred to OnlyFans before May 1, 2020, and by ceasing payments to Plaintiffs and Class members for their monthly accrued commissions from these Referred Creators' gross revenues after May 1, 2021.

178.   Defendants' actions willfully and egregiously interfered with, and continue to interfere with, Plaintiffs' and Class members' right to receive and possess this 5% commission from the gross revenues of Creators they referred to OnlyFans before May 1, 2020.

179.   Plaintiffs and Class members were injured, and continue to be injured, by Defendants taking possession of their owed commissions.

180.   Plaintiffs and Class members are entitled to 5% of all gross revenues earned by their Referred Creators that accrued within the applicable limitations period. Plaintiffs and Class members seek damages for these unpaid commission payments in an amount to be proven at trial.

### VIII. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and for members of the Class, respectfully request the Court enter judgment in their favor and against Defendants, as follows:

A.   Certification of the proposed Class and Subclass, including appointment of Plaintiffs' counsel as Class Counsel and Plaintiffs as Class Representatives;

B.   Declaratory relief finding that Plaintiffs and Class members are entitled to 5% commission from the lifetime gross revenues of the Creators they referred to OnlyFans before May 1, 2020;

-43-
CLASS ACTION COMPLAINT

Case No. _____

011337-11/3505440 V1

C.  Compensatory damages, in an amount as proven at trial;

D.  Pre- and post-judgment interest on any amounts awarded;

E.  Reasonable attorneys' fees and costs, as permitted by law; and

F.  Such other or further relief as may be appropriate.

### IX.  DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable.

DATED: August 12, 2026          Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By /s/ *Christopher R. Pitoun*
Christopher R. Pitoun (SBN 290235)
301 North Lake Avenue, Suite 920
Pasadena, California 91101
Telephone: (213) 330-7150
Facsimile: (213) 330-7152
christopherp@hbsslaw.com

Robert B. Carey (*pro hac vice forthcoming*)
Rachel E. Fitzpatrick (*pro hac vice forthcoming*)
HAGENS BERMAN SOBOL SHAPIRO LLP
11 West Jefferson, Suite 1000
Phoenix, Arizona 85003
Telephone: (602) 840-5900
Facsimile: (602) 840-3012
rob@hbsslaw.com
rachelf@hbsslaw.com

*Counsel for Plaintiffs*

-44-
CLASS ACTION COMPLAINT
Case No. _____

011337-11/3505440 V1